IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CARL A. WESCOTT**, | Case No. 3:23-cv-1736-SI |
| Plaintiff, | **ORDER** |
| v. | |
| **ROGER M. POLLOCK;** and **DOES 1 THROUGH 10**, | |
| Defendants. | |

**Michael H. Simon, District Judge.**

Plaintiff Carl A. Wescott, representing himself, brings claims on behalf of himself and claims he contends have been assigned to him from his limited liability company, Callister LLC, doing business as Capital Ideas ("Capital Ideas"), and a real estate appraiser, Dr. Rene Torres. Wescott sues Defendant Roger M. Pollock for breach of two contracts. The first is a financing contract, described by Wescott as between Pollock and Capital Ideas, although the contract is signed by Wescott individually ("Financing Contract"). The second is an appraisal agreement

PAGE 1 – ORDER

between Dr. Torres and Pollock ("Appraisal Agreement"). Pollock moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Wescott fails to state a claim and that the case should be dismissed with prejudice.[1] For the reasons that follow, the Court grants Pollock's motion in part but allows Wescott leave to replead.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the nonmoving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "[T]o be entitled to the presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a

---

[1] Although Pollock states that he moves to dismiss with prejudice, he argues that the Court should dismiss Wescott's claim under the first contract without leave to amend, leaving Wescott's claim under the second contract, which involves only $5,707 in damages. Defendant argues that the Court should decline to retain "supplemental jurisdiction" over that claim and dismiss so that it can be heard in Oregon small claims court. The merits of this argument are discussed below, but even if granted, it would require a dismissal without prejudice.

PAGE 2 – ORDER

plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an

unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## BACKGROUND

Wescott and Pollock are real estate developers and "long-time friends." Compl. (ECF 1) ¶¶ 34, 40. In 2021, they decided to go into business together. *Id.* at ¶ 36. At the time, Pollock was raising funds for a development project in Mexico called Cerritos Village, where he intended to build 49 beach villas on a budget of approximately 15 million dollars. *Id.* at ¶¶ 36, 43, 47. He sought Wescott's help in securing five to ten million dollars from third party investors to finance the first phase of the Cerritos Village project. *Id.* at ¶¶ 44-47. This case arises from disputes over two contracts that were formed relating to that first phase.

**A. Financing Contract**

In October 2021, Wescott and Pollock signed the Financing Contract, a document titled "World's Simplest Contract to Raise Debt as a Consultant." ECF 1 at 22 (Compl. Ex. C). Wescott's signature line reflects only his name, not his name as signing on behalf of any company. *See id.* Wescott alleges, however, that Capital Ideas (the "doing business as" name of his company, Callister LLC) was the "party that was in contract with Mr. Pollock to raise debt capital for Pollock's residential development," Compl. ¶ 2, and that Capital Ideas has assigned its rights to Wescott. *Id.*; *see also* ECF 1 at 20 (Compl. Ex. A).[2]

---

[2] The Court notes that the assignment is from Capital Ideas, which is an "assumed business name" and is not the "real and true name" of the entity doing business. *See generally* Or. Rev. Stat. § 648.005(1).

PAGE 4 – ORDER

The relevant provisions of the Financing Contract for the purposes of this dispute are the third, fourth, and seventh paragraphs. They read:

> [Paragraph 3] The parties agree on NCND. The ND part is that Wescott will keep Pollock's information confidential, except of course sharing necessary information with prospective investors to get to a closing. The NC part is a non-circumvent, just ensuring that if one of Wescott's investors funds Mr. Pollock's project, Capital Ideas (Wescott's company) will be paid. Capital Ideas is a dba for a newly formed entity in the UAE.
>
> [Paragraph 4] Should Carl Wescott of Capital Ideas be successful in raising capital for Mr. Pollock, Pollock or his company will pay a consulting fee to Capital Ideas. For each US $1 million raised, US $60,000 will be paid to Capital Ideas. The consulting fee will be paid within two business days of the successful close of capital raised.
>
> . . . .
>
> [Paragraph 7] Mr. Wescott's expenses are his own, and none of his expenses shall be reimbursed or reimbursable by Mr. Pollock (though, to facilitate a closing, other parties will likely charge fees, and lender/investors will likely insist on an escrow and insurance). No monies will be paid to Wescott or Capital Ideas unless there is a successful raise/close with one or more of Wescott's investors.

*Id.* The Financing Contract also states at the end of the sixth paragraph: "All decisions, of course, are Mr. Pollock's based on available market options." *Id.*

Upon signing this agreement, Wescott began his search for potential investors. He alleges that in December 2021, he found a candidate, Guaranty Financial of Abu Dhabi ("GFAD"), that was willing to move forward with an investment. Compl. ¶ 75. In January 2022, purportedly after performing due diligence, GFAD made an offer of $10.6 million, with a 10% ($1,060,000) up front cost. *Id.* at ¶¶ 77-79. GFAD sought to close in Abu Dhabi in February 2022. *Id.* at ¶ 80. Wescott alleges that Pollock, however, turned down the offer because he refused to pay the up-front fees. *Id.* at ¶¶ 81-82.

PAGE 5 – ORDER

In May 2022, Wescott identified another potential investor, the Global Capital Partners Fund ("GCPF"), which was based in New York. *Id.* at ¶ 83. After weeks of discussion with Wescott, GCPF purportedly offered a letter of intent and loan commitment for an investment of five million dollars. *Id.* at ¶¶ 84-86. Wescott alleges that once again, Pollock turned down the offer. *Id.* at ¶¶ 88, 92. This time, Pollock allegedly insisted that GCPF was a "scam" and "fraud," even after Wescott invited him to do due diligence to confirm that GCPF was legitimate and had dispersed more than two billion dollars in loans. *Id.* at ¶¶ 88-90.[3]

Wescott brought this lawsuit in November 2023, alleging that Pollock owes Capital Ideas a consulting fee for the two opportunities that Wescott secured and Pollock declined. Wescott alleges that based on the rate set forth in the Financing Contract, his company is owed $636,000 for securing the GFAD proposal and $300,000 for securing the GCPF proposal. *Id.* at ¶¶ 95-97. Wescott also seeks "foreseeable consequential damages" in addition to what he claims Capital Ideas is owed under the Financing Contract.[4] *Id.* at ¶ 102.

---

[3] Pollock asserts in his motion that he considered GFAD a scam, for requiring an up-front payment of approximately one million dollars and because he could not ascertain any information about the company other than an internet post about it being a scam. Regarding GCPF, Pollock contends that the problem was that Wescott "never provided Pollock with any letter of intent from GCPF, and the Complaint contains no allegation to the contrary, or letter or communication from GCPF." ECF 21 at 5. The complaint, however, specifically alleges that Wescott *did* provide a letter of intent from GCPF to Pollock. Compl. ¶¶ 85-86. The complaint does not attach the documents, but in considering a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts Wescott's well pleaded factual allegations and does not accept additional facts asserted in Pollock's response brief.

[4] Wescott alleges that Pollock knew that Wescott had "significant contracts" on the continent of Africa to raise funding for real estate developers. *Id.* at ¶ 103. To finish those projects, Wescott states, he needs less than $100,000 to pay Dr. Torres for six or seven appraisals. *Id.* at ¶ 104. Thus, Wescott alleges, the fees withheld by Pollock are actively preventing him from completing his other development projects and have resulted in damages of "millions of dollars." *Id.* at ¶ 105. Wescott claims that he "had also asked Mr. Pollock to pay him in phone calls, citing his consequential damages and the dramatic impact on his life and finances

PAGE 6 – ORDER

## B. Appraisal Agreement

Pollock hired Dr. Rene Torres in August 2021 to appraise the Cerritos Village development site to facilitate a construction loan on the project. *Id.* ¶ 58; ECF 1 at 23-24 (Compl. Ex. D). Dr. Torres sent Pollock the Appraisal Agreement, which Pollock signed on August 27, 2021. ECF 1 at 23-24 (Compl. Ex. D). The terms of the Appraisal Agreement provide:

> The fee for completing this assignment will be $8,500.00 plus any expenses incurred, invoiced at cost. In this case, we would require a non-refundable payment of $4,000.00 to be paid with the acceptance of this agreement and prior to any travel, plus an advance expense allowance of $1,500, making a total of $5,500 due upon the signing of this agreement. The remaining $4,500.00 of the fee plus any additional expenses incurred over and above the $1,500 advance for expenses will be due upon completion and delivery of the report.

*Id.* at 24. Wescott alleges that although Pollock paid the $5,500 up front as promised, he did not pay Dr. Torres the remaining costs, an amount of $5,717.07. Compl. ¶¶ 70, 72, 98. Wescott states that Dr. Torres assigned his legal claims to Wescott per an assignment signed in February 2023. *See* ECF 1 at 21 (Compl. Ex. B). Wescott thus also seeks the $5,717.07 that Pollock allegedly owes Dr. Torres.

## DISCUSSION

### A. Governing Law

Under Oregon law, contract interpretation proceeds in three steps.[5] *See Yogman v. Parrott*, 325 Or. 358, 361 (1997). First, "the court examines the text of the disputed provision, in

---

of not being paid by Mr. Pollock, despite his successfully performing twice as per the Parties' contract." *Id.* at ¶ 106.

[5] The contracts do not contain a choice of law provision. Both parties, however, agree that Oregon law applies. *See* Compl. ¶ 14; ECF 21 at 6; ECF 24 at 3. Accordingly, at this stage of the litigation, the Court applies Oregon law governing contract interpretation.

PAGE 7 – ORDER

the context of the document as a whole. If the provision is clear, the analysis ends." *Id.* Second, if a court finds that the contract is ambiguous, then the trier of fact will attempt to resolve that ambiguity by referencing properly admitted extrinsic evidence of the parties' intent. *Id.* at 363-64. Finally, if the ambiguity cannot be resolved by means of extrinsic evidence, a court should use canons of construction to resolve the ambiguity. *Id.*

Oregon case law offers further guidance on determining whether a contract provision is ambiguous. Namely, courts will not strain permissible meanings to create an ambiguity where none would otherwise exist. *W. Fire Ins. v. Wallis*, 289 Or. 303, 308 (1980). Unless the contract directs otherwise, courts imbue contract terms with their plain and ordinary meaning. *Groshong v. Mutual of Enumclaw Ins.*, 329 Or. 303, 308 (1999). Moreover, the determination of whether an ambiguity exists must be made in light of the contract as a *whole*. *Yogman*, 325 Or. at 361. Ambiguity is found only if, in context, a phrase or clause can *reasonably* be given more than one possible meaning, *Pacific First Bank v. New Morgan Park Corp.*, 319 Or. 342, 347-48 (1994), or because of indefiniteness, erroneous usage, or form of expression. *N. Pac. Ins. v. Hamilton*, 332 Or. 20, 25-26 (2001).

## B. First Claim (Breach of Financing Contract)

Wescott alleges that he "fully performed as per the Parties' contract twice." Compl. ¶ 95. Wescott bases this allegation on his interpretation of the Financing Contract under which Capital Ideas would be paid for every investment offer that Wescott *presented* to Pollock, regardless of whether Pollock closed the deal. Wescott's interpretation of the contract appears to rest on his isolated reading of the word "successful" in the first sentence of paragraph four of the contract. *See id.* at ¶ 93. ("Mr. Pollock declined to pay the Plaintiff for this *successful* performance, too, under the Parties' contract." (emphasis added)). In his motion to dismiss, Pollock points to

various provisions in the Financing Contract in support of his contention that Capital Ideas was not entitled to a consulting fee until the *close* of a deal.

The Court agrees with Pollock and finds that the Financing Contract unambiguously conditions payment upon the actual raising of capital, not the mere presentation of a proposal. The parties use the term "successful" three times in the Financing Contract. The first time this term occurs is in paragraph four: "[s]hould Carl Wescott of Capital Ideas be successful in raising capital for Mr. Pollock, Pollock or his company will pay a consulting fee to Capital Ideas." ECF 1 at 22 (Compl Ex. C). This sentence provides that Wescott would only be paid if he in fact *raised* capital. The last sentence of paragraph four confirms this interpretation: "The consulting fee will be paid within two business days of the successful close of capital raised." This provision ties the timeframe of payment to the close of a deal; getting paid within two days of closure requires that there be a closure in the first place. The third and final use of "successful" occurs in the last sentence of the contract, in paragraph seven: "No monies will be paid to Wescott or Capital Ideas unless there is a successful raise/close with one or more of Wescott's investors." *Id.* This clause confirms that Pollock does not have to pay Wescott until Wescott actually raises capital for the Cerritos Village Project.[6]

The Financing Contract thus unambiguously provides that Pollock is only required to pay a consulting fee to Capital Ideas upon the closing or other actual raising of capital with an investor. Because Wescott alleges a breach of contract based only on proposed deals that never closed, Wescott fails to allege a breach of the Financing Contract.

---

[6] Another clause in the Financing Contract provides further support of the Court's interpretation. In paragraph three, the contract states, "if one of Wescott's investors funds Mr. Pollock's project, Capital Ideas (Wescott's Company) will be paid." *Id.* This clause again directly ties the method of payment to the closure of a deal; it indicates that the only time that payment would be made would be upon the *actual funding* of the project.

In his response to the motion to dismiss, Wescott introduces a series of allegations and arguments that did not appear in his complaint. These include:

> 1. The Parties made agreements after the initial signed contract, that amount to modifications of the original contract. Mr. Pollock breached the modified contract multiple times by not accepting construction loans that met agreed-upon criteria, and then not paying the Plaintiff.
>
> 2. Given that Mr. Pollock should have accepted the raised monies, which met all agreed-upon criteria, after establishing the correct and true set of facts, the Plaintiff should have an opportunity in this Court to file a motion for specific performance.
>
> 3. Mr. Pollock's second refusal of a construction loan that met agreed-upon terms in the modified contract constituted a repudiation of the contract.
>
> 4. Mr. Pollock asked the Plaintiff to perform an impossible task in a contract that Mr. Pollock never intended to honor. Mr. Pollock had induced the Plaintiff to enter into the Parties' contract by misrepresenting that Mr. Pollock would accept the construction loans. After the parties signed the contract, Mr. Pollock continued to make such false misrepresentations in the Parties' contract modifications documented in emails . . . .

ECF 24 at 4-5.

In his response to the motion to dismiss, Wescott no longer argues, as he alleged in his complaint, that he performed and Pollock breached the Financing Contract as written. Instead, Wescott now argues that Pollock promised, through a series of oral "modifications" to the contract, that Pollock would agree to loans that met certain agreed-upon criteria. Wescott contends that Pollock rejected both the GFAD and the GFCP even though they met these criteria. Wescott seems to be arguing that the alleged oral modifications restricted Pollock's previous unfettered discretion (contained in the sixth paragraph of the contract) to accept or reject any investment opportunity and expanded Pollock's payment obligation to proposals instead of only

PAGE 10 – ORDER

closed funding deals. The breach, as recharacterized, comes from Pollock's decision not to honor those oral modifications.

Because these allegations were not made in the complaint, however, the Court cannot consider them in evaluating Pollock's motion to dismiss. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("'[N]ew' allegations contained in [a party's] opposition . . . are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Nor may a plaintiff "effectively amend his Complaint by raising a new theory in response to a dispositive motion." *Cloud Found. v. Haaland*, 2024 WL 1991552, at *7 n.4 (D. Or. Apr. 12, 2024) (cleaned up) (quoting *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010)). Accordingly, the allegations that Pollock made promises to Wescott about accepting certain investments or that Pollock engaged in misrepresentation or fraud cannot affect the Court's analysis regarding the motion before it. If Wescott wants to assert a breach of contract claim based on these new allegations regarding a modified contract, he must do so in an amended complaint, consistent with his obligations under Rule 11 of the Federal Rules of Civil Procedure.

**C. Second Claim (Breach of Appraisal Agreement)**

Wescott's second claim is for the alleged breach of the Appraisal Agreement. Pollock does not dispute that there is a cognizable breach of contract claim with respect to Dr. Torres. Instead, Pollock argues that if the Court dismisses Wescott's first claim, then the Court would have only this second, smaller breach of contract claim before it. Pollock notes that on its own, this claim seeking $5,717 neither presents a federal question nor satisfies the amount in controversy required for diversity jurisdiction. To that end, Pollock requests that the Court

PAGE 11 – ORDER

decline to exercise "supplemental jurisdiction" over the claim[7] and, in the interest of "[p]ractical considerations and judicial economy," allow the case to be decided in Oregon small claims court. ECF 26 at 5.

The Court disagrees with Pollock's characterization that this claim presents a question of supplemental jurisdiction. This Court has original diversity jurisdiction over Wescott's state law claims. The issue of supplemental jurisdiction generally arises when the Court has original jurisdiction based on federal question jurisdiction and takes supplemental jurisdiction over state law claims. If the Court later dismisses all federal law claims, the Court may decline to exercise supplemental jurisdiction over the state law claims and dismiss the case. *See, e.g.*, *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994) (cleaned up) (emphasis omitted) ("In the usual case in which federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state law claims.").

Pollock does not argue that after dismissal of Wescott's first claim, leaving only his second claim, the Court no longer has subject-matter jurisdiction because the amount in controversy has dropped below $75,000. The Court itself, however, must, ensure that it has subject matter jurisdiction throughout the litigation.

"[D]iversity jurisdiction is determined at the time the action commences, and a federal court is not divested of jurisdiction if a party subsequently moves to another state . . . or if the amount in controversy subsequently drops below the minimum jurisdictional level." *Hill v. Blind Indus. & Servs. of Maryland*, 179 F.3d 754, 757 (9th Cir. 1999) (citation omitted); *see also*

---

[7] Pollock does not raise a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure aserting lack of subject-matter jurisdiction as to this claim.

*Singer v. State Farm Mut. Auto. Ins.*, 116 F.3d 373, 375 (9th Cir. 1997) ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938))); *see also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1237 (9th Cir. 2014) (rejecting argument in the context of the Class Action Fairness Act jurisdictional damages threshold that post-filing developments that would reduce the amount in controversy defeated jurisdiction because "the amount in controversy is determined from the pleadings as they exist at the time" of the originating filing in federal court, in this case a removal petition). This is because "[i]t is well settled that post-filing developments do not defeat jurisdiction if jurisdiction was properly invoked as of the time of filing." *Visendi v. Bank of America, N.A.*, 733 F.3d 863, 868 (9th Cir. 2013) (quotation marks omitted).

The Court therefore finds that dismissing Wescott's first contract claim and leaving only his smaller claim of $5,717 does not divest the Court of subject matter jurisdiction. *See Barefield v. HSBC Holdings PLC*, 356 F. Supp. 3d 977, 986 (E.D. Cal. 2018) ("The Court is persuaded that the dismissal of claims bringing the total amount in controversy below $75,000 did not dissolve the Court's original jurisdiction over the suit."); *see also Indian Hills Holdings, LLC v. Frye*, 2021 WL 5994036, at *11 (S.D. Cal. Dec. 17, 2021) ("Thus, the fact that Mr. Frye paid Plaintiff $140,000.00 following the filing of the Complaint in this case, thereby reducing the amount in controversy from $182,000.00 to $42.000.00, does not defeat the Court's original diversity jurisdiction over this case at the time of filing."). The Court retains its original diversity jurisdiction over this case.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss, ECF 21. The Court grants the motion with respect to Wescott's first breach of contract claim

PAGE 13 – ORDER

based on the Financing Contract and dismisses that claim. The Court denies the motion with respect to Wescott's second claim for $5,717.07 under the Appraisal Agreement. This claim may thus move forward in this Court. Wescott may file an amended complaint not later than November 15, 2024, if he can cure the deficiencies identified in this Order relating to his first breach of contract claim consistent with Wescott's obligations under Rule 11.

**IT IS SO ORDERED**.

DATED this 16th day of October, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 14 – ORDER